# PAULINE TOMCZEK v. ALFRED JOHNSON and Others.[1]

March 11, 1910.

Nos. 16,443—(210).

**Contributory Negligence — Assumption of Risk.**

> Deceased, having loaded on a push car a large rock **from a quarry by** means of a powerful steam derrick, was engaged in pushing the loaded car over an irregular track. The rock, shaped somewhat like a wedge and resting on its short side, or corner, fell on his head and killed him. It is *held* that his conduct in insecurely loading the car and in pushing the car with the rock in its unsafe position precluded recovery of damages by his representative.

Action in the district court for Stearns county by the administratrix of the estate of Leo Tomczek, deceased, to recover $5,000 for the death of her intestate. Defendants' answer alleged that deceased's injuries were caused solely by his want of care, caution and prudence in the performance of his duties as an employee and servant of defendants, and that if there were any dangers connected with said employment they were perfectly apparent to deceased and well known to and appreciated by him. The case was tried before Taylor, J., who directed a verdict in favor of defendants. From an order denying plaintiff's motion for a new trial, she appealed. Affirmed.

*Harry S. Locke,* for appellant.

*Reynolds & Roeser,* for respondents.

JAGGARD, J.

Defendants and respondents were engaged in operating a stone quarry, in connection with which they used a powerful steam derrick, with an arm sixty-five feet long, to hoist rock from the quarry hole to the top of a pile of rocks beside the quarry. On the top of that pile, a steel track commenced at a point that could be reached by the

[1]Reported in 125 N. W. 263.

derrick arm and ran east over the rock pile for fifteen or twenty rods. The track ran down hill from the point of loading for a distance of about eight feet, and then on comparatively level ground. The car was customarily loaded with rock hoisted from the quarry hole by the derrick arm. An operator guided the arm of the derrick to which the rock was attached. That arm was lowered by the engineer until the rock would rest on the car. The workman would then release the grappling hooks from the rock, signal to the engineer to start the derrick arm on its way, and remove the trig, which held the car wheels, and follow the car down the incline. When the car reached the level portion of the track, he was required to push it hard enough to keep it in motion until it reached the place where the rock was to be unloaded. The track had a joint in it, about thirty feet from the loading point, that would cause the car to jump and jar as it passed over.

Plaintiff's intestate, a common laborer, twenty-one years of age, was employed by defendants to operate this car. After he had been at work two weeks, he was killed by a seventeen hundred pound rock, which fell and crushed his head against the floor of the car. He was found unconscious, with the rock lying on his head, about thirty feet from the landing point, and died a few hours later. Plaintiff had not worked at anything except common labor, and prior to his employment by defendants, about three months before, had done odd jobs of common labor about the quarry, and had never had anything to do with handling heavy rock until he was required to work with the car and the rock, alone on the top of the rock pile.

No one saw the accident, but the circumstances appear to show that he must have loaded the rock onto the car in such a way that, when the car went over the joint in the track, it caused the rock to roll over and fall upon him. Deceased's head must have been over the floor of the car when the rock fell. And it might have been that he was leaning forward in pushing the car, or that just as the rock fell he had stumbled and fallen forward, so that the rock caught him. The trial court directed a verdict for defendant. This appeal was taken from the order of the trial court denying plaintiff's motion for a new trial.

Plaintiff claims that "the work was very dangerous for an inexperienced man to engage in, and that the danger was not open and apparent, but of such a character" the intestate, "on account of his inexperience in such work, could not understand, know, or appreciate the dangers; and that his death was caused solely and alone by the negligent acts of defendants in setting him to work upon a defective track to do such work alone, without having an experienced quarryman in charge to instruct the boy how properly to do the work and to point out to him the hidden dangers, and show him the way to avoid them."

If this view be correct, the court was in error in excluding evidence of a custom existing among quarrymen as to training inexperienced men in handling big rocks, and in refusing to submit the question to the jury. We are of opinion, however, that the rulings of the trial court were justified by the record.

The evidence shows that it was within the power of the man loading the car to so control the position of an ordinary rock on the car as to render its equilibrium stable and to render it safe to push the car. One witness testified that "it is a common thing for the rock to be raised up several times from the car so as to get it right, and then the engineer is signaled to put it back on; if it is not on right, to raise it up again, until it is placed on the car the way the man wants it. This is a very common thing, and [plaintiff's intestate] frequently did it. * * * The engineer, in operating the derrick, * * * operated it entirely in response to signals from the man on the dump pile."

Another witness testified: "So far as loading rock on the car itself is concerned, it is usually loaded by the men on the dump by a code of signals given to the engineer. With a heavy stone hanging on the grab hooks of the derrick in the atmosphere before it touches the car or the ground, it is very easy with your hands to turn the stone around in a different position to let it down on the car as you desire it. There is nothing to hinder a man unloading any kind of rock, this shape or otherwise, by the use of grab hooks on the derrick and his hands in placing the rock on the car any side down he desires. A rock like this one, by the proper manipulation of the stone while it is in the air, and by the use of the grab hooks after it comes down

on the table, the rock could be laid down, any of the flat sides down they wanted to."

The rock in question is shown by photographs to have been somewhat wedge-shaped; it had "three large and two small faces. As it hung in the grappling hooks of the derrick, the heavy end was down," so that the rock, when lowered onto the car, would rest upon the smallest of the three larger sides, which was at the base of the rock as it hung in the air. The rock was thus placed on a narrow edge or corner, so that its equilibrium was unstable. Its balance proved so delicate that the jar of the car as it passed over the somewhat irregular track disturbed the center of gravity and caused the rock to fall. The deceased himself put the stone in this position on the car. The trial court justly remarked: "Placing a stone in that position, where it is liable to fall over, is negligence, undoubtedly; but this negligence was the negligence of the deceased himself. It was the negligence of no one else."

It is not, however, material whether the fault of the intestate be regarded as contributory negligence, or whether he be held to have assumed the risk. The situation was entirely simple. A child must know that a rock may fall; "a boy is supposed to take note of the law of gravity." The deceased saw the rock, knew its position on the car, was familiar with the track, and with his duty to push the loaded car over that track. It was easily within his power to have put this rock on the car "the way the man wanted it." This he knew, and this power he frequently exercised. It is not material that the actual position of the rock was due to "putting the grab hooks on the rock so that the heavy end hung down." The danger that the rock might roll off the base upon which it naturally planted itself was plainly observable, even by a young man like the deceased, with his limited experience.

Nor is plaintiff's position that the master was negligent in not warning or instructing the deceased of the danger tenable.

We have examined all the authorities to which the counsel refer. They apply familiar and indisputable principles to the particular facts in issue. None of the facts are sufficiently similar to those here presented to justify their discussion here.

Affirmed.